PER CURIAM.
The appellant, Sylvia Ross, was convicted of the misapplication of property, a violation of § 13A-9-51, Ala.Code 1975, and using her position as a clerk at the Wilcox County Water Works for personal gain, a violation of the State’s ethics law codified at § 36-25-5, Ala.Code 1975. Ross was sentenced to 1 year for the misapplication-of-property conviction and to 10 years for the ethics-law conviction. The trial court suspended the sentence, ordered Ross to serve five years on supervised probation, and imposed a fine of $10,000.
The State’s evidence tended to show the following. On the morning of May 3, 2006, Emily Tyler, an examiner with the Alabama Department of Examiners of Public Accounts, arrived at the Wilcox County Water Works to conduct an unscheduled audit. Ross and Towanda Taite were clerks at the Water Works.[1] Tyler said that she and another examiner, Christina Smith, counted the cash on hand and examined the books and determined that for four days in April 2006 money had been received at the Water Works but had not been deposited in the Water Works account at the Camden National Bank. She further testified that later on May 3 deposits were made at the bank for the missing four days in April. Tyler said that based on her calculations approximately $11,000 was initially unaccounted for. She also testified that the only two individuals who had access to the funds were Ross and Taite.
Betty Dennis, an employee of Camden National Bank, testified that on May 3, *108 2006, Taite came to the bank with an empty bag and asked her to stamp duplicate copies of deposit slips as if money had been deposited. Taite told her that she would bring the money in later. Dennis declined and notified the bank manager.
Earnest Evans, chief deputy at the Wilcox County Sheriffs Office, testified that on May 3, 2006, he talked to Ross, that he read her her Miranda[2] rights, and that she signed a waiver-of-rights form. Evans said that Ross told him that she and Taite had been using the money from the nightly deposits at the Water Works and later replacing the money. They returned the money on the same day the examiners conducted their unscheduled audit.
Ross and Taite were tried together. After they were convicted but before they were sentenced, Ross moved for a new trial. She argued that one of the jurors, F.G.,[3] had presented extrinsic evidence to his fellow jurors during the jury-deliberation process.
When denying relief on this claim the circuit court stated:
“The only issue into which the Court may inquire is whether there was any outside influence or [whether] extraneous information was brought into the deliberations. The Court allowed this inquiry and 10 of the jurors testified about this matter. The Court finds as a fact that a statement regarding her co-defendant’s prior criminal conviction was made by one of the jurors during the deliberations. Every juror who was questioned, except 2, testified that it was mentioned. The other 2 did not testify that it was not mentioned, but that they could not recall. Every juror except the 3 who gave affidavits said it had no effect on the verdict. Those 3 said that it did affect them, but these are also the same 3 who, in their affidavits, testified that they either did not vote guilty or only voted guilty because the foreman told them that they had to. While the Court has found that there was extraneous information brought in by the mention of the co-defendant’s prior criminal record, the Court does not believe that either the jury or its verdict was ■ the result of this information. While prejudice is presumed, the Court finds that this presumption is overcome by the totality of the evidence. [4] It appears that the information was a passing remark made that did not affect the verdict. The jurors themselves stated that either it did not affect them or they initially gave a different reason for attacking the verdict. There was no evidence that this statement was made regarding Ms. Ross. There was no evidence that the statement had any effect on the verdict against Ms. Ross. Even if it did prejudice Ms. Taite, which the Court by separate order has found that it did not, there is no evidence that it affected the verdict against this defendant.”
(C.R. 54-55.) This appeal followed.
I.
Ross argues that the circuit court erred in denying her motion for a new trial *109 made on the basis that the jurors had been exposed to extrinsic information during their deliberations. Specifically, Ross asserts that one juror, F.G., told his fellow jurors that her codefendant, Taite, had a previous conviction and had served time.
At the hearing on her postjudgment motion, Ross questioned the jurors and submitted affidavits. The Alabama Rules of Evidence prohibit a juror from testifying about what occurred during the deliberation process. However, Rule 606(b), Ala. R. Evid., contains one exception to this general rule:
“Upon an inquiry into the validity of a verdict or indictment, a juror may not testify in impeachment of the verdict or indictment as to any matter or statement occurring during the course of the jury’s deliberations or to the effect of anything upon that or any other juror’s mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror’s mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury’s attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror’s affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes. Nothing herein precludes a juror from testifying in support of a verdict or indictment.”
The Advisory Committee’s Notes to Rule 606(b), Ala. R. Evid., further provide, in pertinent part:
“Many federal courts have interpreted Fed.R.Evid. 606(b) to allow jurors to testify as to the purely objective facts about the extraneous information or outside influence, but not about how the information was or was not considered. That is, those courts have not allowed jurors to testify about whether or not the extraneous information or outside influence affected the verdict of any juror or the jury as a whole. In those courts the judge must decide, based only on the objective facts, whether probable prejudice occurred. See, e.g., 3 J. Weinstein & M. Berger, Weinstein’s Evidence § 606[05] (1990); C. Mueller & L. Kirkpatrick, 3 Federal Evidence § 254 (2d ed.1994); United States v. Howard, 506 F.2d 865 (5th Cir.1975). This rule is not intended as an adoption of the interpretation given by those federal courts. The committee intends this rule not to alter preexisting Alabama law on this issue, which is to the effect that jurors are not limited to testifying merely that extraneous information was brought before them but also may testify as to whether they were influenced by the extraneous information. Whitten v. Allstate Ins. Co., 447 So.2d 655 (Ala.1984). Of course, jurors’ testimony about the effect on them and their deliberations is not controlling; the trial judge may consider other factors in determining whether prejudice occurred. See United States v. Bolinger, 837 F.2d 436, 440 (11th Cir.1988).”
During the hearing, eight of the jurors recalled that one juror had made the statement that Taite had previously served time. The jurors’ responses varied as to who made the statement and when it was made. The jury foreman, M.M., testified that the statement was made after the jury had determined that Ross and Taite were guilty. Juror S.A. said that the statement was made near the time the jurors voted and that it did affect her verdict. Juror P.O. testified that the statement was made in the middle of deliberations and that it did not affect her verdict. Juror M.B. *110 testified: “Well, at one time, it affected me but then again, when I thought about it, it really didn’t bother me because I had already decided what I was going to vote.” (R. 212.) Juror N.F. testified that before a verdict was reached another juror said that Taite had been to prison and that “[rjeally my verdict was not guilty because I really think the State didn’t have enough evidence no way to convict her.” (R. 215.) Juror F.G. said that the statement was made but it did not affect her verdict. Juror B.H. testified that she was not sure that such a statement was made. Juror R.M. testified that the statement did not affect her vote. Juror E.S. testified that the statement was made at the end of deliberations and that it did not affect her verdict. Juror S.C. could not recall that any statement had been made.[5]
The statement by one juror during deliberations concerning Taite’s prior conviction was extraneous information — it was not admitted as evidence during the trial. In Taite v. State, [Ms. CR-07-2246, Nov. 13, 2009] — So.3d - (Ala.Crim.App. 2009), this Court, in a plurality opinion, held that Taite was prejudiced as a matter of law:
“[I]nformation about Taite’s alleged pri- or conviction would have suggested that Taite had a propensity to commit illegal acts, which was ‘ “crucial in resolving a key material issue in the case.” ’ Dawson v. State, 710 So.2d 472, 475 (Ala. 1997) (citing Hallmark v. Allison, 451 So.2d 270, 271 (Ala.1984), and Ex parte Thomas, 666 So.2d 855 (Ala.1995)). The juror’s statement about Taite’s alleged prior conviction made it more likely that the jury found Taite guilty based on the jury’s belief that she was of bad character and that the prior conviction tended to show her guilt in the case under consideration by the jury. The jury’s exposure to and consideration of this inherently prejudicial and unproven statement is in the limited category of information that results in prejudice as a matter of law.”
-So.3d at --Our holding in Taite is consistent with federal caselaw. The United States Court of Appeals for the Eighth Circuit in United States v. Rodriquez, 116 F.3d 1225, 1227 (8th Cir.1997), stated:
“This Court has considered what types of influences will be considered extrinsic or extraneous to deliberations, so that a juror may testify about them. Extrinsic or extraneous influences include ‘publicity received and discussed in the jury room, matters considered by the jury but not admitted into evidence, and communications or other contact between jurors and outside persons.’ United States v. Bassler, 651 F.2d 600, 602 (8th Cir.1981), cert. denied, 454 U.S. 1151, 102 S.Ct. 1018, 71 L.Ed.2d 305 (1982). A prior conviction of a defendant, for example, when not admitted as evidence at trial, but which nonetheless entered into the jury’s deliberations through personal knowledge of a juror, has been held to be ‘extraneous prejudicial information.’ United States v. Swinton, 75 F.3d 374, 381 (8th Cm. 1996).”
However, when the extraneous information concerns evidence not that the defendant has a prior conviction but that a codefendant has a prior conviction, there is no prejudice as a matter of law. In Unit *111 ed States v. Brantley, 733 F.2d 1429 (11th Cir.1984), the United States Court of Appeals for the Eleventh Circuit addressed whether it was necessary to remand a case for a hearing on allegations of juror misconduct when during deliberations one juror told his fellow jurors that one of the defendants had “been in the same kind of trouble before.” The court stated:
“The extrinsic fact that Murray had been in this kind of trouble before pertained only to Murray and any spillover prejudice to the other defendants would have been negligible, particularly in view of the overwhelming evidence against these defendants. See United States v. Winkle, 587 F.2d 705, 715 (5th Cir.) (considering weight of evidence against defendants in determining prejudice of extrinsic evidence), cert, denied, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979).”
733 F.2d at 1440M1. See also Ex parte Apicella, 809 So.2d 865, 872 (Ala.2001) (“Generally, a presumption of prejudice applies only in a case in which the jury’s consideration of the extraneous material was ‘ “crucial in resolving a key material issue in the case.” ’ Dawson v. State, 710 So.2d 472, 475 (Ala.1997) (citing Hallmark v. Allison, 451 So.2d 270, 271 (Ala.1984), and Ex parte Thomas, 666 So.2d 855 (Ala. 1995)).”).
“ ‘The ruling of the trial judge denying a motion for new trial will not be disturbed in the absence of a showing of abuse of discretion, and this Court will indulge every presumption in favor of the correctness of his ruling.’ ” Reynolds v. City of Birmingham, 723 So.2d 822, 824 (Ala.Crim.App.1998), quoting Hall v. State, 348 So.2d 870, 875 (Ala.Crim.App.1977).
“ ‘Juror misconduct will justify a new trial when it indicates bias or corruption, or when the misconduct affected the verdict, or when from the extraneous facts prejudice may be presumed as a matter of law.’ Whitten v. Allstate Ins. Co., 447 So.2d 655, 658 (Ala.1984). As a general rule, ‘[wjhere extraneous material [is] introduced into the jury’s deliberations, ... actual prejudice [must] be shown to work a reversal of the verdict.’ Nichols v. Seaboard Coastline Ry., 341 So.2d 671, 672 (Ala.1976). However, in some cases, ‘the character and nature of the extraneous material ... constitutes prejudice as a matter of law and no showing that the jury was in fact influenced thereby in arriving at their verdict is necessary.’ Id. (prejudice presumed as a matter of law from jury’s consulting encyclopedia and dictionary definitions of ‘negligence,’ ‘contributory negligence,’ ‘subsequent negligence,’ and ‘subsequent contributory negligence’).”
Minshew v. State, 594 So.2d 703, 716 (Ala. Crim.App.1991). “Of course, jurors’ testimony about the effect on them and their deliberations is not controlling; the trial judge may consider other factors in determining whether prejudice occurred.” Advisory Committee’s Notes, Rule 606, Ala. R. Evid.
In this case, there is no indication that any extrinsic evidence concerning Ross was admitted during the jury’s deliberations. Ross also confessed that she took money from the Water Works and that she would later replace the money she had taken. The circuit court gave separate jury instructions concerning each defendant. Certainly, evidence of Taite’s prior conviction would have been crucial in resolving the issue of Taite’s guilt; however, it was not crucial in resolving the issue of Ross’s guilt. Based on the unique facts presented in this case, we cannot say that the circuit court abused its discretion in denying Ross’s motion for a new trial.
*112 II.
Ross also argues that the circuit court erred in denying her motion for a new trial after one of the jurors, F.G., failed to disclose during voir dire that he had personal knowledge of Taite’s prior conviction.
“Tt is true that the parties in a case are entitled to true and honest answers to their questions on voir dire, so that they may exercise their peremptory strikes wisely. See Fa-bianke v. Weaver, 527 So.2d 1258 (Ala. 1988). However, not every failure to respond properly to questions propounded during voir dire “automatically entitles [the defendant] to a new trial or reversal of the cause on appeal.” Freeman v. Hall, 286 Ala. 161, 166, 288 So.2d 330, 335 (1970); see also Dawson v. State, [710 So.2d 472] at 474 [ (Ala.1997) ]; and Reed v. State, [547 So.2d 596 (Ala.1989) ]. As stated previously, the proper standard to apply in determining whether a party is entitled to a new trial in this circumstance is “whether the defendant might have been prejudiced by a veniremember’s failure to make a proper response.” Ex parte Stewart, 659 So.2d [122] at 124 [ (Ala.1993) ]. Further, the determination of whether a party might have been prejudiced, i.e., whether there was probable prejudice, is a matter within the trial court’s discretion.’
“Ex parte Dobyne, 805 So.2d 763, 771-72 (Ala.2001) (footnote omitted). In applying this standard we look at ‘the temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror’s inadvertence or willfulness in falsifying or in failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about.’ DeBruce v. State, 890 So.2d 1068, 1078 (Ala.Crim. App.2003), overruled on other grounds, Ex parte Jenkins, 972 So.2d 159 (Ala. 2005).”
Hooks v. State, 21 So.3d 772, 780-781 (Ala. Crim.App.2008).
Here, the question concerned Ross’s co-defendant, not Ross. At the hearing F.G. was asked no questions concerning his responses to voir dire questions. Nor did he assert what questions were asked during voir dire. Also, F.G. denied that he told his fellow jurors during deliberations that Taite had a prior conviction. Ross failed to meet her burden of establishing that she was entitled to relief on this claim.
Accordingly, for the foregoing reasons, Ross’s convictions are due to be affirmed.
AFFIRMED.
WISE, P.J., and KELLUM, J., concur. WINDOM, J., concurs in the result. MAIN, J., concurs in the result, with opinion. WELCH, J., dissents, with opinion.

. Taite was also convicted of the misapplication of funds and violating the State's ethics law. She appealed to this Court. This Court recently reversed Taite’s conviction because extraneous information was admitted during jury deliberations. See Taite v. State, [Ms. CR-07-2246, Nov. 13, 2009] - So.3d - (Ala.Crim.App.2009).

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. To protect the jurors' anonymity we are using their initials.

4.Although the circuit court applied the incorrect standard in this case, see our discussion later in this opinion, we may affirm a circuit court's ruling if is correct for any reason. See McNabb v. State, 991 So.2d 313 (Ala.Crim.App.2007).

. Ross also sought to introduce evidence from jurors concerning comments and statements that were made during the deliberation process. Specifically, Ross introduced a statement allegedly made by the jury foreman that “they couldn't convict one and acquit the other." However, we cannot consider this statement. The “debates and discussions” of the jury are protected from inquiry. See Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 8 (Ala.2007).